UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL C. COX,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | NO. C17-5217-JPD<br><br><br>ORDER |

Plaintiff Michael C. Cox appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a 59-year-old man with a high school diploma and vocational training in sheet metal working. Administrative Record ("AR") at 45, 476. His past work experience includes employment as a ranch hand, construction laborer, and loader at Home Depot. AR at 75-76, 493. Plaintiff was last gainfully employed in August 2013. AR at 476.

ORDER - 1

In January 2014, Plaintiff applied for SSI and DIB, alleging an onset date of August 13, 2013. AR at 421-34. Plaintiff asserted that he is disabled due to bipolar disorder, gout, alcoholism, and calcium build up. AR at 475.

The Commissioner denied Plaintiff's claims initially and on reconsideration. AR at 349-52, 358-68. Plaintiff requested a hearing, which took place on May 12, 2015. AR at 33-98. On January 29, 2016, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform his past relevant work as a bagger, as well as other specific jobs existing in significant numbers in the national economy. AR at 11-24. After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review. AR at 1-7. On March 24, 2017, Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1, 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Cox bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On January 29, 2016, the ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The claimant has not engaged in substantial gainful activity since August 22, 2013, the alleged onset date.

3. The claimant has the following severe impairments: bipolar I disorder, generalized anxiety disorder, alcohol dependence, gout, cervical strain with mild degenerative disc disease, and low back pain.

4. The claimant's impairments, including the substance use disorder, meet section(s) 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1.

5. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

6. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.

7. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) subject to the following. He should avoid climbing ladders, crawling, or balancing; he can occasionally climb ramps or stairs, stoop, kneel, and crouch; he should avoid any exposure to extreme heat or work at heights; he can perform routine or learned tasks; he should not have high stress work; he should work in jobs with goals rather than numerical quotas; he would require hands on training for work setting changes; he can have superficial face to face public contact; he should not have direct access to alcohol,

perform security work, or be in charge of the safety of others; he would be off task up to 6 percent of a normal workday; and he would be absent 4-hours per month for impairment-related medical treatment.

8. If the claimant stopped the substance use, the claimant would be able to perform past relevant work as bagger, as well as other jobs existing in significant numbers in the national economy.

9. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(1), 404.1535, 416.920(f) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR at 14-24.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in assessing the opinions of examining providers Huong Lakin, D.O.; Samuel Coor, D.O.; and Terilee Wingate, Ph.D.; treating nurse Amy Heckler, DNP; and non-examining sources;

2. Whether the ALJ erred in discounting Plaintiff's subjective testimony;

3. Whether the ALJ erred in discounting lay testimony; and

4. Whether the ALJ's decision is undermined by evidence submitted for the first time to the Appeals Council.

Dkt. 13 at 1.[2]

## VII. DISCUSSION

A. <u>The ALJ erred in assessing medical opinion evidence.</u>

Plaintiff asserts that the ALJ erred in assessing a variety of medical opinions, each of which the Court will address in turn.

---

[2] Plaintiff also challenges the ALJ's RFC assessment, but in doing so only reiterates arguments made elsewhere. Dkt. 13 at 14-15. Therefore, this assignment of error need not be addressed separately.

ORDER - 6

1. *Legal standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the

opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

An ALJ may afford less weight to medical opinions provided by "other sources," such as nurse practitioners, physicians' assistants, and counselors, upon providing germane reasons. *Molina v. Astrue*, 674 F.3d 1004, 1111 (9th Cir. 2012).

2. *Drs. Lakin & Coor*

Dr. Lakin examined Plaintiff in May 2015 for purposes of a DSHS physical evaluation. AR at 1492-1523. Dr. Lakin had access to Plaintiff's range-of-motion testing performed the prior week by a physical therapist. AR at 1498-1501. Dr. Lakin opined that Plaintiff could perform light work. AR at 1506.

Dr. Coor performed a consultative neurological examination in October 2014, and reviewed notes from *inter alia* physical therapy. AR at 1544-54. He performed a physical examination and tested muscle strength, and concluded that Plaintiff could lift/carry up to 50 pounds occasionally (and less weight frequently), and sit for three hours at one time (eight hours total in a workday), and stand or walk for two hours each at one time (or three hours each total in a workday). *Id*.

The ALJ gave "some weight" to Dr. Lakin's opinion, indicating that he gave more weight to Dr. Coor's opinion because Dr. Coor specialized in neurology and Dr. Lakin did not indicate a specialty. AR at 20-21. The ALJ gave significant weight to Dr. Coor's opinion. AR at 20.

ORDER - 8

Plaintiff argues that the ALJ erred in giving more weight to an opinion based on a neurological examination, because Dr. Lakin performed "complete range of motion testing" that supported his opinion from a musculoskeletal perspective. Dkt. 13 at 6. At the outset, it should be noted that Dr. Lakin did not actually perform any range-of-motion testing; he reviewed range-of-motion testing performed by a physical therapist the week before. Moreover, Dr. Lakin did not cite range-of-motion testing as the basis for his opinion. He did reference an MRI previously obtained by a primary care provider. AR at 1504 (referring to AR at 1520). The MRI report does not mention any particular functional limitations, however. AR at 1520. Thus, Plaintiff merely speculates that range-of-motion testing explains the discrepancies between the opinions of Drs. Lakin and Coor. He has not shown that the ALJ erred in preferring the opinion of a provider specializing in neurology, given Plaintiff's neurological conditions. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

Plaintiff also suggests that Dr. Coor's opinion was undermined by his failure to review Dr. Lakin's opinion. Dkt. 13 at 7. The regulation cited by Plaintiff does not require that a consultative examiner be provided all medical opinions, however, but only "necessary background information." 20 C.F.R. § 404.1517. Plaintiff cites an internal agency manual suggesting that medical opinions may be provided to consultative examiners, but this guidance does not create judicially enforceable obligations on the Commissioner. Dkt. 13 at 7 n.1 (citing Program Operations Manual System (POMS) DI 22510.017 at B); *Lockwood v. Comm'r of Social Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) ("POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." (citing *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003)).

ORDER - 9

Accordingly, Plaintiff has not established error in the ALJ's assessment of the opinions of Drs. Lakin and Coor.

3. *Dr. Wingate & Ms. Heckler*

Dr. Wingate performed a DSHS psychological examination in April 2015 and opined that Plaintiff had several moderate and marked limitations in cognitive and social functioning. AR at 1475-87. The ALJ discounted Dr. Wingate's opinion because he found the marked limitations noted therein to be "inconsistent with the numerous mental health treatment notes showing the claimant with stable mood, cooperative behavior, normal memory, cognition, insight, and judgment when he is compliant with treatment[.]" AR at 21 (citing AR at 757-62, 921, 948, 953, 1595, 1598, 1616, 1659, 166[4]).

The Court agrees with Plaintiff that many of these treatment notes are not actually inconsistent with Dr. Wingate's opinion as indicated by the ALJ. For example, the cited treatment notes reference behavior problems and agitation (AR at 757, 759); anxious, frightened, and irritable mood, and a long-term memory impairment (AR at 921, 948, 953). Because the ALJ's reasoning is not supported by the evidence cited by the ALJ, this reasoning is not legitimate and therefore erroneous.

This error should be remedied by a remand for further proceedings, rather than a finding of disability, because the Appeals Council evidence indicates that further proceedings would serve a useful purpose: to allow the ALJ to consider an updated record, including the evidence submitted for the first time to the Appeals Council, particularly a new diagnosis of Parkinson's disease (AR at 1749). *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495-96 (9th Cir. 2015) (discussing the test for determining whether a remand for a finding of disability is appropriate).

Because some of the symptoms described by Ms. Heckler overlap with those described

ORDER - 10

by Dr. Wingate, the ALJ shall also reconsider Ms. Heckler's affidavit (AR at 1674-76) in light of Dr. Wingate's opinion.

     5.     *Medical expert & State agency opinions*

Plaintiff argues that the ALJ erred in assigning more weight to the opinions of non-examining providers over the opinions of examining and treating providers. Dkt. 13 at 8-9. Plaintiff does not acknowledge that an ALJ may discount examining and treating source opinions upon providing legally sufficient reasons, and thus the status of a source is not dispositive as to the weight to be given to any particular opinion. Plaintiff has not identified any particular error in the ALJ's reasoning with regard to the non-examining sources, because he has not shown that those opinions were inconsistent with all the remaining evidence in the record. *See Andrews*, 53 F.3d at 1041 (holding that "the report of a nonexamining, nontreating physician need not be discounted when it 'is not contradicted by *all other evidence* in the record.'" (quoting *Magallanes*, 881 F.2d at 752 (emphasis in original))).

Because the ALJ is directed to reconsider some of the examining and treating sources on remand, the ALJ shall also reconsider the weight assigned to the non-examining sources in light of the preference for opinions provided by sources that treated or examined Plaintiff.

B.    <u>The ALJ did not err in discounting lay evidence.</u>

Plaintiff's friend Wendy Papero completed a third-party function report in February 2014. AR at 485-92. The ALJ found that Ms. Papero's statement was inconsistent with the objective medical evidence, and noted that she was not medically trained and that her personal relationship with Plaintiff tainted her ability to describe his symptoms as a "disinterested" third party. AR at 22. Plaintiff challenges the ALJ's assessment of Ms. Papero's statement.

     1.     *Legal standards*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

ORDER - 11

sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he or she must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

2. *Inconsistency with the medical evidence*

The ALJ did not err in discounting Ms. Papero's statement because it was inconsistent with the medical evidence. *See Bayliss*, 427 F.3d at 1218. Ms. Papero described limitations caused by, *inter alia*, Plaintiff's gout and hypertension (AR at 490) and the ALJ cited medical evidence to explain why he found that those conditions were not disabling. AR at 20. To the extent that the ALJ also mentioned other reasons to assign little weight to Ms. Papero's statement, those reasons are superfluous and amount to at most harmless error. Accordingly, the Court affirms the ALJ's assessment of Ms. Papero's statement.

C. <u>The ALJ shall reconsider Plaintiff's subjective testimony on remand.</u>

Because this case is remanded for further proceedings, as discussed *supra*, the ALJ shall reconsider Plaintiff's subjective testimony, including any provided at a subsequent hearing, in a new decision.

D. <u>The Appeals Council evidence will be considered on remand.</u>

Plaintiff submitted three new medical opinions and a set of neurology treatment notes, all of which post-dates the ALJ's decision, for the first time to the Appeals Council. AR at 1677-1753. The Appeals Council considered the new evidence, but found that it did not

warrant changing the ALJ's decision because it did not pertain to the period adjudicated by the ALJ. AR at 2.

Plaintiff argues that the Appeals Council evidence actually does undermine the ALJ's decision because it shows he is more limited than found by the ALJ. Dkt. 13 at 17. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

The Court need not address this issue further, in light of the Court's finding that this case must be remanded for further proceedings. On remand, the ALJ will have the opportunity to consider the Appeals Council evidence for the first time, along with any other updated evidence.

## VIII. CONCLUSION

For the foregoing reasons, the Court REVERSES and REMANDS this case to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 22nd day of February, 2018.

*James P. Donohue*

JAMES P. DONOHUE
Chief United States Magistrate Judge